**NATIONAL CITY BANK et al.**

v.

**FRUCHTMAN et al.**

2002-Ohio-7445.]

Court of Common Pleas of Ohio,
Lucas County.

No. CI0200001079.

Decided June 4, 2002.

William T. Maloney, for plaintiffs.

Lawrence Kiroff, for defendant United States of America.

Sheldon S. Wittenberg, for defendants Irwin and Shirley Fruchtman.

Harry W. Cappel, for defendant Ameriquest Mortgage Co.

Robert Williams, for defendant Lucas County, Ohio.

CHARLES J. DONEGHY, Judge.

{¶ 1} This foreclosure action is before the court on the motions for summary judgment filed by defendant/cross-claim plaintiff/counterclaim plaintiff Ameriquest Mortgage Company ("Ameriquest") and by substituted plaintiff K–6, Inc. ("K–6"); the movants seek a judgment addressing the priority of their respective mortgage liens in this case. Upon review of the pleadings, memoranda of the

parties, evidence in the record, and applicable law, the court finds that the Ameriquest's motion is well taken and that K–6's motion is not.

## INTRODUCTION

{¶ 2} In December 1986, defendants Irwin and Shirley Fruchtman obtained a loan from the predecessor of plaintiff National City Bank ("National"), which the Fruchtmans secured with a mortgage on their home located at 5445 Citation Road North, Toledo, Lucas County, Ohio. National's predecessor filed the mortgage with the Lucas County Recorder on or about December 8, 1986. (National Affid. para. 5.) The Fruchtmans renewed the mortgage in 1993, and the parties filed that renewed instrument ("the National mortgage") that year. (National Affid. para. 6) In October 1998, the Fruchtmans sought to borrow $211,000 from defendant Ameriquest Mortgage Company ("Ameriquest") and again offered their Citation Road home as security. Ameriquest conditionally agreed to the loan contingent on National waiving the priority of the National mortgage and granting Ameriquest a first lien on the Citation Road property. On October 21, 1998, National agreed; it signed a waiver-of-priority agreement in favor of an Ameriquest mortgage securing the $211,000 loan. (National Affid. para. 10.) Ameriquest and the Fruchtmans subsequently executed a note and the mortgage ("the October 23 mortgage") on October 23, 1998, and they filed that mortgage on October 27, 1998. (National Affid. paras. 11, 12.)

{¶ 3} On October 29, 1998, Ameriquest had the Fruchtmans execute a new mortgage ("the October 29 mortgage") in order to cure a perceived execution defect in the October 23 mortgage. (National Affid. para. 13.) The October 29 mortgage was materially identical to the October 23 mortgage, and Ameriquest provided the Fruchtmans with no new funds. Id. Ameriquest filed the October 29 mortgage on November 20, 1998, filed the waiver-of-priority agreement relating to the October 23 mortgage on November 23, 1998, and filed a release of the October 23 mortgage on December 20, 1999. (National Affid. paras. 12, 13; Affid. of Facts para. 13.) Even though the waiver-of-priority agreement specifically mentioned only the October 23 mortgage, and even though National did not execute another waiver agreement specifically addressing the October 29 mortgage, neither Ameriquest nor National intended that the release of the October 23 mortgage would affect the waiver-of-priority agreement; both lenders intended first-lien status for the $211,000 Ameriquest loan to Fruchtmans and the October 29 mortgage. (National Affid. paras. 13, 14; Affid. of Facts para. 15.) National intended, at all times relevant to this matter, that the National mortgage would be subordinated to an Ameriquest mortgage that served as security for the $211,000 loan. (National Affid. para. 14; Affid. of Facts para. 15.) On January 10, 2000, National filed this foreclosure action against the Fruchtmans

and named Ameriquest and others as defendants. Ameriquest filed an answer on March 10, 2000, and filed an answer with a cross-claim and counterclaim on June 19, 2000. In the March 10 answer, Ameriquest specifically asserted that the amount remaining on the $211,000 loan to the Fruchtmans was "secured by a valid first mortgage lien" on the Citation Road property; Ameriquest expressly asserted that its mortgage enjoyed priority over the National mortgage as indicated in the waiver-of-priority agreement executed by National. (March 10 Answer para. 3.) In the June 19 answer, Ameriquest again reasserted that its mortgage was a valid first lien on the Fruchtmans' home. (June 19 Answer, Second Count para. 1.)

{¶ 4} The movants do not dispute that K–6 purchased the National mortgage in August 2000 and that K–6 entered this action that same month. K–6 filed an answer to Ameriquest's cross-claim and counterclaim on or about December 21, 2001. The court has determined that the Fruchtmans are in default of the relevant notes and that foreclosure is proper. In their pending summary judgment motions, Ameriquest and K–6 each contend that their own mortgage liens (arising from the October 29 mortgage and the National mortgage, respectively) have priority over the other party's mortgage. This issue of priority is now ripe for resolution.

## DISCUSSION

{¶ 5} In its motion for summary judgment, Ameriquest argues that (1) National and Ameriquest intended, at all relevant times (upon the execution and filing of the October 23 mortgage, upon the release of that instrument, and upon the filing of the October 29 mortgage), that an Ameriquest mortgage covering the $211,000 loan have priority over the National mortgage; and (2) the doctrine of lis pendens bars K–6 from acquiring any interest in the Fruchtmans' Citation Road home that challenges Ameriquest's rights in that parcel. In K–6's motion, K–6 argues that (1) the terms of the waiver-of-priority agreement indicate that the agreement applies only to the October 23 mortgage; (2) a good-faith purchaser of a mortgage, such as K–6, acquires the mortgage free of latent equities; (3) R.C. 5301.23 requires the public filing of accurate records relating to interests in real property; and (4) the doctrine of lis pendens is inapplicable because K–6 already has acquired an interest in the Fruchtmans' Citation Road property and because K–6 has a paramount interest in the property over Ameriquest.

{¶ 6} As a general rule, pursuant to R.C. 5301.23,[1] the first mortgage recorded on a parcel of real property has priority over any other mortgage on the

---

1. {¶ a} R.C. 5301.23 reads:

parcel filed subsequently. *L.O.F. Emp. Fed. Credit Union v. Hahn* (Dec. 3, 1982), Lucas App. No. L–82–258, 1982 WL 6663, * 2. The purpose of this rule is to protect third parties who might later acquire various interests in the property. Id., 1982 WL 6663, * 2; Ohio Atty.Gen.Ops. No. 14, 1999 WL 68317, * 3. Two prominent exceptions exist to the general rule. *L.O.F. Emp. Fed. Credit Union,* supra, 1982 WL 6663, * 2–3; Ohio Atty.Gen.Ops. No. 14, 1999 WL 68317, * 3. First, pursuant to R.C. 5301.35,[2] a party with mortgage-lien priority may waive priority in writing by making a notation on the mortgage or on the record, or the party may execute and file a separate agreement waiving priority. *L.O.F. Emp. Fed. Credit Union,* supra, 1982 WL 6663, * 2–3. Second, the parties to the original encumbering transactions may waive priority by an oral or by an unrecorded written agreement. Id., 1982 WL 6663, at * 4–5; Ohio Atty.Gen.Ops. No. 14, 1999 WL 68317, * 4–5. Such an agreement is binding upon the parties to the transaction. *L.O.F. Emp. Fed. Credit Union,* supra, 1982 WL 6663, * 2–3; Ohio Atty.Gen.Ops. No. 14, 1999 WL 68317, * 3–4. This court observes that these two exceptions further equity (i.e., they protect innocent third parties); the first exception permits a waiver of priority by *recording* a waiver agreement (thereby affording "constructive notice" to the world), and the second permits and enforces an oral or unrecorded waiver of priority only among the parties who had *actual notice* of the agreement (the parties to the transaction). Neither exception is precisely applicable to the instant case.

{¶ 7} Ameriquest asserts that the doctrine of lis pendens permits Ameriquest to enforce its claim of first lien. In *Cook v. Mozer* (1923), 108 Ohio St. 30, 140 N.E. 590, the Supreme Court of Ohio offered a description of the doctrine by quoting a legal commentator of the time.

---

{¶ b} "(A) All properly executed mortgages *shall be recorded* in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record. If two or more mortgages pertaining to the same premises are presented for record on the same day, they shall take effect in the order of their presentation. The first mortgage presented shall be the first recorded, and *the first mortgage recorded shall have preference.*" (Emphasis added.)

2.  {¶ a} R.C. 5301.35 reads as follows:

{¶ b} "The priority of the lien of a mortgage may be waived to the extent specified by the holder of the lien in favor of any lien, mortgage, lease, easement, or other interest in the property covered by the mortgage, by writing the waiver of priority on the original mortgage and signing it, by writing the waiver of priority upon the margin of the record of that mortgage and signing it, or by a separate instrument acknowledged as provided by section 5301.01 of the Revised Code. That waiver, when recorded upon the margin of the record of the mortgage, or *when recorded as a separate instrument, is constructive notice to all persons dealing with either the property described in that mortgage or the mortgage itself from the date of filing the waiver for record.* The waiver, if written upon the mortgage or upon the margin of the record of the mortgage, need not be acknowledged, but if written upon the margin of the record, the signing shall be attested by the county recorder." (Emphasis added.)

{¶ 8} " 'The general rule is that one not a party to a suit is not affected by the judgment. The exception is that *one who acquires an interest in property which is at that time involved in litigation in a court having jurisdiction of the subject-matter and of the person of the one from whom the interests are acquired, from a party to the proceeding, takes subject to the judgment or decree, and is as conclusively bound by the result of the litigation as if he had been a party thereto from the outset. This is so irrespective* of whether he has been made a party to the proceeding, or had actual notice of the pendency of the proceeding, and *even where there was no possibility of his having had notice of the pendency of the litigation.'* " (Emphasis added.) Id. at 36–37, 140 N.E. 590, quoting 25 Cyclopedia of Law & Procedure 1450.

{¶ 9} The *Cook* court held:

{¶ 10} "The doctrine of lis pendens has long been established and recognized as the general law of the land upon the broad public policy of *maintaining the status quo of rights and interests in property involved in litigation, not only as between the parties thereto but as to third parties having conflicting interests,* until the action pending has been finally adjudicated." (Emphasis added.) Id. at paragraph one of the syllabus.

■ {¶ 11} Thus, lis pendens provides constructive notice to a bona fide purchaser and establishes a public policy to maintain the status quo during the pendency of litigation. Id. at 36–37, 140 N.E. 590. See, also, *Allen–Baker v. Shiffler* (Lucas C.P.1998), 99 Ohio Misc.2d 49, 54, 715 N.E.2d 1185. Lis pendens is now codified in R.C. 2703.26, which states:

{¶ 12} "When summons has been served or publication made, the action is pending so as to charge third persons with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title."

■ {¶ 13} In order for lis pendens to be properly invoked the following elements, discussed in *Cook*, must be present: "(1) the property must be of a character to be subject to the rule; (2) the court must have jurisdiction both of the person and the res; and (3) the property or res involved must be sufficiently described in the pleadings." *Allen–Baker v. Shiffler*, 99 Ohio Misc.2d at 54, 715 N.E.2d 1185, citing *Cook v. Mozer*, 108 Ohio St. at 37, 140 N.E. 590.

■ {¶ 14} In this case, these *Cook* elements are present. One, the property at issue is real property subject to a foreclosure; such property is a proper subject for the operation of lis pendens. Id. at 55, 140 N.E. 590. See, also, *Stone v. Equitable Mtge. Co.* (1927), 25 Ohio App. 382, 391–392, 158 N.E. 275 ("A foreclosure describing specific property is clearly lis pendens as to such property"). Two, this court has jurisdiction over all parties and over the Fruchtmans'

Citation Road parcel. And, three, the Citation Road parcel is described in several pleadings.

{¶ 15} In addition to the *Cook* elements being present in this case, it is undisputed that National filed this foreclosure action and that Ameriquest filed its answer and its counterclaim and cross-claim (in which it asserted its first-lien claim based on waiver-of-priority), prior to K–6's acquiring an interest in the National mortgage and entering this action. If, as R.C. 2703.26 states, K–6 may not acquire an interest in this action that is contrary to the October 29 mortgage of Ameriquest (the counterclaim/cross-claim plaintiff), then this action must be determined by reference to the rights between Ameriquest and National (K–6's predecessor). Pursuant to the waiver-of-priority agreement, and the clear intent of those parties, Ameriquest's October 29 mortgage has priority over the National mortgage. See *L.O.F. Emp. Fed. Credit Union*, supra, 1982 WL 6663, * 2–3, 1982 Ohio App. Lexis 11600, * 6–9 (the parties in an encumbrancing transaction may agree to a waiver of priority even if the waiver agreement is unrecorded); Ohio Atty.Gen.Ops. No. 14, 1999 WL 68317, * 3–4.

{¶ 16} Based on the foregoing, the court finds that Ameriquest's mortgage has priority over the mortgage held by K–6.

## JUDGMENT ENTRY

{¶ 17} It is ORDERED that the motion for summary judgment filed by defendant Ameriquest Mortgage Company ("Ameriquest") on the lien-priority issue is granted and the motion for summary judgment filed by plaintiff K–6, Inc. ("K–6") as to the same issue is denied. It is further ORDERED that the mortgage held by Ameriquest has priority over the mortgage held by K–6. It is further ORDERED that the rights of the United States herein shall be preserved.

Judgment accordingly.